**UNELKO CORP., an Illinois corporation; Howard G. Ohlhausen, Plaintiffs–Appellants,**

v.

**Andy ROONEY, an individual; CBS, Inc., Defendants–Appellees.**

No. 89–15751.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 20, 1990.

Decided Aug. 24, 1990.

Robert P. Cummins, Bickel & Brewer, Chicago, Ill., Robert H. Oberbillig, Snell & Wilmer, Phoenix, Ariz., for plaintiffs-appellants.

Douglas P. Jacobs, Helen M. Gold, CBS, Inc., New York City, David J. Bodney, Daniel C. Barr, Brown & Bain, P.A., Phoenix, Ariz., for defendants-appellees.

Before ALARCON and POOLE, Circuit Judges, and HATTER, District Judge.[*]

ALARCON, Circuit Judge:

Plaintiffs Unelko Corporation and Howard G. Ohlhausen (Unelko) appeal from an order dismissing their defamation claim against Andy Rooney and CBS, Inc. (Rooney) on summary judgment. The suit arises from statements made by Rooney during the April 17 and May 8, 1988 broadcasts of "60 Minutes," among which was the assertion that Unelko's product "Rain–X" "didn't work." The district court grant-ed summary judgment for Rooney, finding that Rooney's statement that Rain–X "didn't work" was protected as opinion and that Unelko had failed to raise a triable issue of fact as to whether any of Rooney's statements were false and defamatory. We affirm because we agree that Unelko failed to create a triable issue of fact as to falsity.

## STATEMENT OF THE CASE

On October 1, 1987, *The Arizona Republic* published a column by Andy Rooney, entitled "RAIN," which reflected on the writer's associations with rainy days. In response to Rooney's comment that cars should have "truck-sized windshield wipers" that would clean the entire windshield, Unelko's national sales manager sent Rooney a letter accompanied by a small supply of Unelko's product "Rain–X." The letter stated in part:

Andy, you don't need those truck-size windshield wipers—all you need is RAIN–X—"The Invisible Windshield Wiper". The one-step, wipe-on automotive glass coating that repels rain, sleet and snow on contact and takes up where windshield wipers leave off!

Our President, Howard Ohlhausen, inventor of RAIN–X (among other chemical products) first realized the same drawbacks that you referred to in your article as a navigator in the United States Air Force. With these windshield wiper inadequacies in mind, Mr. Ohlhausen invented RAIN–X and received a chemical patent in 1972.

Enclosed please find literature outlining the many benefits, applications and properties of this unique material.

*In order that you may personally test and evaluate RAIN–X performance,* we have forwarded a small supply to you today via U.P.S.

We trust that RAIN–X will increase your affection for rainy days, while increasing

---

[*] Honorable Terry J. Hatter, United States District Judge for the Central District of California, sitting by designation.

your driving safety, comfort and visibility.

(Emphasis added).

During the April 17, 1988 broadcast of "60 Minutes," Rooney commented on "junk" he had received in the mail. Rooney's entire segment consisted of the following:

MIKE WALLACE: You think you get junk mail? How would you like to be Andy Rooney? Or, even worse, how would you like to be Andy Rooney's mailman?

ANDY ROONEY: People send me things. I get an awful lot of junk that I don't want that just seems too interesting to throw away. Some people send me stuff because they're friendly. Others, of course, send it because they're looking for a plug on the air.

I get a lot of caps, and a lot of cups. This is a cup from the ship Guam that I spent some time on off Beirut. Captain Quarterman sent me this; I like it. This is a musical cup. I don't like that much.

I get a lot of music sent me. People send me songs they've written on tape, which I don't listen to. This is a piece of sheet music. It's from a prisoner in Florida, and the song is called "Lady Liberty, Oh How I Love Thee." He's in prison for murder, so he's going to be there a long time without liberty.

Hamilton Watch sent me this expensive watch. It's not really proper for me to keep something like this, and I should send it back.

I get pictures of myself. Here's a picture of me at a party with John Chancellor. You probably didn't know I traveled in those circles.

Here's the sort of thing I get a lot of. I don't know why they sent me this. It's a piece of a door. I guess they were pushing some new kind of material.

Here's something for the windshield of your car called Rain-X. The fellow who makes this sent me a whole case of it. He's very proud of it. I actually spent an hour one Saturday putting it on the windshield of my car. I suppose he'd like a commercial or a testimonial. You

know how they hold the product up like this? It didn't work.

And then I get books. Holy mackerel, do I get books. Mostly from publishers, but I get a lot from authors, too. They send me their manuscripts. They want me to read them.

Look at this. Several people have sent me this over the years. The illustrator ripped off a picture of me. I suppose I could have sued him, but I was busy that day.

This is the most repulsive thing anyone sent me. It's from some anti-cigarette group. It's an ashtray in the shape of a human lung.

Someone suggested I could neaten up my office with these giant paper clips. Sort of a good idea.

This is one of the best things I ever got. It's a orange peeler. It's changed my life. Simple enough, made by some company in Tulon, Illinois. I have an orange almost every morning of my life, and I love peeling it this way. It really is magic. You can amaze your friends with this. Look at that. There. Presto!

People are very nice. But would you do me two little favors? One, don't send me anything more. And two, don't ask me to send any of this to you.

Several viewers wrote to Rooney after the broadcast, stating that Rain–X is a good product and that "it works." Although the mail Rooney received was unanimous in praising Rain–X, Unelko had previously received several letters complaining that "[Y]our product simply doesn't work"; "I found the product did not perform as advertised"; and "This product did not work for me."

On May 4, 1988, Unelko filed an action based on the April 17 "60 Minutes" broadcast for defamation, product disparagement, and tortious interference with business relationships. On May 8, 1988, Rooney made the following statements during his segment of "60 Minutes":

BRADLEY: You want to talk money? Big money? Talk to Andy Rooney.

ANDY ROONEY: Tonight I feel like a rich man. Along with CBS, I'm being

sued for $16 million. I hope they take American Express. You may recall that three weeks ago I talked about things people have sent me. One of the items was this product, called Rain–X, made by the Unelko Corporation of Scottsdale, Arizona. The tag on this three and a half ounce bottle says that it lists for $6.59, sells for $3.70.

"Dramatically improves wet weather visibility, even without wipers. Repels rain, sleet and snow. Makes frost, bugs, mud and grime easy to remove."

Well, I said I tried it and it didn't work for me. No matter what you say on 60 Minutes, you get a reaction. The clock was still ticking when I got a call from a fellow at a local boatyard in our town, saying he'd come right over and show me how to use Rain–X.

Then we got letters saying it was a good product. David Fryer of Silver Spring, Maryland, says "Granted, the product is not easy to apply correctly, but once it is applied, it performs absolutely everything its manufacturer claims for it." John Wadsworth of Greensburg, Pennsylvania, says it works "if you use just water and not window cleaner in your windshield sprayer." Robert DeLay of Ettawa, Tennessee, says, "If I were Rain–X, I'd sue you." June Willis of Houston says, "I think you owe the inventor, Howard Olhausen, an apology." Well, I'll tell you, June, he'd have a lot easier time getting an apology out of me than $16 million. Jim Mills, *Automotive News* western sales manager, says, "Your comments about Rain–X were very unfair."

Several letters said that Rain–X works best when you're going fast, and maybe that was my trouble. I called American Airlines trying to find out what they think of Rain–X, and I called several automobile manufacturers, to see what they say about it, but I didn't get any help here because they don't use it, and I haven't been able to find out what Rain–X is made of.

So that's my problem tonight, friends. This fellow sent me this product to evaluate, and I did. Was I only expected to comment on it if I loved it? What if he'd sent me two tickets to a movie he'd made, and I didn't like the plot? He must know I don't do commercials. But, in spite of all that, to tell you the truth, I feel sort of bad about the whole thing. Please don't send money unless I ask for it.

Unelko subsequently requested and obtained leave to amend its complaint to assert additional claims for relief stemming from the May 8 broadcast.

Rooney moved for summary judgment on December 5, 1988. On April 25, 1989, the district court granted the motion. Unelko timely appeals.

## DISCUSSION

### I. Defamation Claim

Unelko claims that the district court's grant of summary judgment on its defamation claim was improper. We review a grant of summary judgment de novo. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989). The district court granted summary judgment because it determined that none of Rooney's words were defamatory statements of fact. The court found that (1) Rooney's statement that Rain–X "didn't work" was protected opinion, and (2) Unelko failed to create a triable issue of fact as to the falsity of any of Rooney's statements that could be viewed as defamatory.

#### A. *The District Court's Ruling That "It Didn't Work" Was "Opinion"*

■ Relying on a significant body of Ninth Circuit case law, the district court found that Rooney's statement that Rain–X "didn't work" was opinion and thus exempt from liability. *See, e.g., Ault v. Hustler Magazine*, 860 F.2d 877, 880 (9th Cir.1988) ("[I]f a challenged statement is one of opinion rather than fact, then under the first amendment it cannot give rise to a defamation claim."), *cert. denied*, —— U.S. ——, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989); *Lewis v. Time, Inc.*, 710 F.2d 549, 553 (9th Cir.1983) ("[A]n opinion is simply

not actionable defamation.").[1] The cases on which the district court relied, however, have all been effectively overruled by the Supreme Court's recent opinion in *Milkovich v. Lorain Journal Co.*, — U.S. —, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In *Milkovich*, the Court rejected the view that "an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." *Id.*, 110 S.Ct. at 2707. Thus, the threshold question in defamation suits is not whether a statement "might be labeled 'opinion,'" but rather whether a reasonable factfinder could conclude that the statement "impl[ies] an assertion of objective fact." *Id.*, at 2705.[2]

Because the "opinion" test applied by the district court is now obsolete, the district court's conclusion that the statement "It didn't work" enjoys first amendment protection as opinion is unwarranted. Yet the record is sufficiently developed for us to analyze both whether "It didn't work" implies an assertion of fact, as required by *Milkovich*, and whether Unelko met its burden of making a showing of falsity. Much of the district court's analysis is relevant in determining whether "It didn't work" is a factual statement. The district court's order discusses Unelko's evidence of falsity at length. We may base our "ruling on any ground finding support in the record." *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 643 (9th Cir.1989). For this reason and because the record is fully developed, we apply the analysis required by *Milkovich*.

B. *"It Didn't Work" as Assertion of Fact*

Rooney argues that his statement "It didn't work" did not imply an assertion of

fact. He relies on *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), for the proposition that speech is protected when it "could not reasonably have been interpreted as stating actual facts about the [product] involved." *Id.* at 50, 108 S.Ct. at 879.

The Court in *Milkovich* determined that the statement before it—that a high-school wrestling coach lied at an athletic association hearing—implied an assertion of fact because the statement satisfied three conditions:

> This is not the sort of loose, figurative or hyperbolic language which would negate the impression that the writer was seriously maintaining petitioner committed the crime of perjury. Nor does the general tenor of the article negate this impression.
>
> We also think the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false.

*Id.*, at 2707. In order to determine whether Rooney's statement that Rain–X "didn't work" could be viewed as implying an assertion of fact, we will analyze: (1) whether Rooney used figurative or hyperbolic language that would negate the impression that he was seriously maintaining that Rain–X did not perform effectively; (2) whether the general tenor of Rooney's segment of "60 Minutes" negated this impression; and (3) whether the assertion that a product works is susceptible of being proved true or false.

1. *Figurative or Hyperbolic Language*

As this circuit has long recognized, there are certain "circumstances in which an 'audience may anticipate efforts by the parties

---

**1.** Because the Arizona Supreme Court has based its rule that opinion is not actionable on the Supreme Court's analysis of the first amendment, *see MacConnell v. Mitten*, 131 Ariz. 22, 25, 638 P.2d 689, 692 (1981) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974)), there is no evidence that Arizona courts would extend more protection to opinion than is required by the federal Constitution.

**2.** It is worthy of note that the Supreme Court's test leaves protected the category of speech known as "pure opinion"—that is, statements that do not imply facts capable of being proved true or false. *Milkovich*, at 2708 (Brennan, J., dissenting). Thus, there remains much truth in the old adage: "You should not say it is not good. You should say you do not like it, and then, you know, you're perfectly safe." Workman Quote–a–Day Calendar, at June 26, 1990 (quoting James MacNeil Whistler).

to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole....'" *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980) (quoting *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 131 Cal.Rptr. 641, 643, 552 P.2d 425, 428 (1976)). In determining whether Rooney's statement is actionable, we "examine the statement in its totality in the context in which it was uttered or published." *Id.*

As the district court noted, Rooney's presentation, as a whole, was characterized by hyperbole to some extent: his analysis contained such statements as "I suppose I could have sued him, but I was busy that day," "This is the most repulsive thing anyone sent me," and "This is one of the best things I ever got." Given the flavor of Rooney's comments, an audience might anticipate rhetoric or hyperbole, rather than a factual assessment of Rain–X's capabilities. Nevertheless, Rooney's statement "It didn't work" is not couched in loose, figurative, or hyperbolic language. It produces the impression that Rooney is maintaining that Rain–X failed to perform as guaranteed, the context of his broadcast notwithstanding. For this reason, the first factor considered by the Supreme Court does not weigh in favor of protecting Rooney from liability for defamation.

### 2. *The Tenor of Rooney's Broadcast*

■ To support its finding that Rooney's statement was protected opinion, the district court found that the tenor of Rooney's broadcast was humorous and satirical. The district court noted:

> [I]t can hardly be disputed that those who turn in to watch Andy Rooney on "60 Minutes" understand that his comments and statements are humorous, satirical, full of ridicule and often to be taken with a grain of salt. His audience realizes that what they get from Rooney is not a factual summation of the news but rather Rooney's opinions on a variety of subjects. Thus, they are less likely to take his comments seriously or as the absolute truth than they would statements from a newspaper or newspro-

gram whose purpose is to report factual news stories.

The tenor of Rooney's segment notwithstanding, the statement "It didn't work" could reasonably be viewed as implying an assertion of objective fact. The humorous and satirical nature of Rooney's segment of "60 Minutes" does not negate the impression that he was making a factual assertion about Rain–X's performance when applied to his vehicles. Although part of a humorous report, the statement "It didn't work" was presented as fact and understood as such by several viewers who wrote to CBS. The humor in Rooney's statement about Rain–X is derived not from hyperbole or exaggeration, but from the fact that his report of the product's effectiveness was the antithesis of what its inventor presumably desired. Rooney's negative evaluation of Rain–X's capabilities differs significantly from his personal assessment of the other items he received in the mail; thus, it receives no protection based on the overall tenor of his "60 Minutes" segment.

### 3. *Whether "It Didn't Work" Is Sufficiently Factual to Be Susceptible of Being Proved True or False*

In determining whether Rooney's words were opinion, the district court noted the vagaries of the statement "It didn't work" as applied to Rain–X:

> As an example, whether or not a lightbulb works is an objective determination. Either it gives off light or it doesn't. Its performance is constant. Consequently whether it works can be determined solely by one's own sensory perception; there is no room for differences of opinion. Other products are incapable of such objective determination. Whether they work depends upon one's subjective evaluation or opinion, which may be influenced by a multitude of differing factors, conditions, situations and perspectives. Rain–X is in the latter category as evidenced, in part, by the letters in the record from consumers expressing both pleasure and displeasure with the product. Consequently, whether Rain–X works is a subjective determination capa-

ble of producing divergent opinions among those who try it. When Rooney stated "it didn't work," he was simply expressing his opinion of the product. As a result, in this context no defamatory meaning can be attached to Rooney's statement.

Although the district court's analysis under the old "opinion" test may have been correct, whether the facts implied by Rooney's "opinion" are susceptible of being proved true or false is a different matter. Turning to a dictionary, one finds that "work," in the sense Rooney used it, means "to function or operate according to plan or design," *Webster's New International Dictionary* (3d ed. 1986) a standard capable of objective determination to some extent when applied to a product designed to improve visibility. *But cf. Lewis,* 710 F.2d at 554 ("[W]e think the term 'shady' is by definition 'cautiously phrased in terms of apparency.' According to Webster's New International Dictionary Unabridged (2d ed.), it means in this context 'equivocal as regards merit or morality; unreliable; disreputable.' ").

Contrary to the district court's analysis, the functions Rain–X purports to perform are not entirely dependent on subjective evaluation. The Rain–X bottle Rooney used, and displayed to the camera, boasted that Rain–X:

> Dramatically improves wet weather visibility—extends & expands your field of vision—lets you see clearly with and without wipers!
>
> Covers windshields, side and rear windows, mirrors & lights with an invisible shield that disperses rain, sleet & snow on contact—shrugs off bugs, frost, salt, mud & grime, makes cleaning a snap. Whatever the weather, whatever you drive—use rain-x for increased all-around visibility, safety, & driving comfort.

Although Rooney identified Rain–X only as "something for the windshield of your car", the extent to which Rain–X lived up to its bottle's claims would be what anyone familiar with the product would have believed Rooney intended his words to mean.

Rooney's statement thus implied that his visibility was not improved, that Rain–X's shield was not invisible, that rain did not disperse on contact, that Rain–X did not repel bugs and other projectiles, that cleaning was not a snap, and that Rain–X did not increase Rooney's all-around visibility, safety, and driving comfort.[3] Although these are somewhat subjective determinations, they are based on factual observations to a sufficient extent to imply an assertion of fact. Whether Rain–X repels rain, facilitates window cleaning, and increases visibility are all capable of being proved true or false. Each determination rests on "a core of objective evidence." *Milkovich,* at 2707. Thus, the statement "It didn't work" is " 'an articulation of an objectively verifiable event.' " *Id.* (quoting *Scott v. News–Herald,* 25 Ohio St.3d 243, 252, 496 N.E.2d 699, 707 (1986)).

For these reasons, a factfinder could conclude that Rooney's statement that Rain–X "didn't work" implied an assertion of objective fact. Unlike the exaggerated and satirical account of "a drunken incestuous rendezvous [between plaintiff and] his mother in an outhouse" at issue in *Falwell,* 485 U.S. at 48, 108 S.Ct. at 878, the statement "It didn't work" is essentially factual. Although Rooney's segment of "60 Minutes" contained some hyperbole and had a humorous tenor, his evaluation of Rain–X was capable of being understood as an assertion that the product failed to meet certain objective indicia of effectiveness. Although the district court may have been correct in characterizing Rooney's words as "opinion," the statement "It didn't work" is not shielded from liability under the standard established in *Milkovich.* Thus, the propriety of the district court's grant of summary judgment depends on whether Unelko created a triable issue of fact as to the falsity of Rooney's statements.

### C. *Unelko's Showing of Falsity*

Even though Rooney's words are not protected as opinion, summary judgment was proper if Unelko made no showing that

---

3. Rooney noted at his deposition that Rain–X    "tended to smear."

Rooney's statements were false or implied false assertions of fact. Unelko argues that summary judgment was improper because Rooney's statement that he had used Rain–X was false, and because the facts implied by the statement that Rain–X "didn't work" were also false and defamatory. For the purposes of analyzing Unelko's showing of falsity, we assume that Rooney's statement "It didn't work" implied the following factual assertions about Rain–X's performance, which Rooney made at his deposition—that it "hazed over when the windshield wiper went one way and tended to smear," that it caused his windshield to be "splotchy," and that the "windshield did not look like the picture on [the] box."

To avoid a grant of summary judgment, Unelko had to " 'set forth specific facts showing that there [was] a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R. Civ.P. 56(e)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

As the Supreme Court has noted, in a private individual's defamation action involving statements of public concern, there is " 'a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.' " *Milkovich*, at 2704 (quoting *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986)). Thus, "a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved." *Id.*, at 2706.

■ " '[Whether] . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record.' " *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985) (opinion of Powell, J.) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983)). Rooney's statement about Rain–X was of general interest and was made available to the general public. *Cf. id.* 472 U.S. at 762, 105 S.Ct. at 2947 (concluding that a credit report "concerns no public issue" because "[i]t was speech solely in the individual interest of the speaker and its specific business audience" and "was made available to only five subscribers"). Moreover, protection of statements about product effectiveness will "ensure that 'debate on public issues [will] be uninhibited, robust and wide-open.' " *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964)). We are persuaded that Rooney's statement addressed a matter of public concern. *Cf. Lechuga, Inc. v. Montgomery*, 12 Ariz. App. 32, 37, 467 P.2d 256, 261 (1970) (Jacobson, J., concurring) ("It is in the public interest to discourage the marketing of defective products.").

Because Rooney's statements involved a matter of public concern, Unelko would bear the burden of proof at trial as to whether Rooney's statements were false. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986); *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 481, 724 P.2d 562, 567 (1986); *see also Phoenix Newspapers v. Church*, 103 Ariz. 582, 596–97, 447 P.2d 840, 854–55 (1968) (en banc) (falsity must be established by a preponderance of the evidence), *cert. denied*, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969). Our determination whether to affirm the grant of summary judgment thus hinges on whether Unelko provided the district court with a sufficient showing that any of Rooney's statements, including his implied factual assertions about Rain–X's performance, were untrue.

■ The only evidence Unelko offered to defeat Rooney's summary judgment motion consisted of: (1) a comparison of a test

performed on Rooney's automobile on June 9, 1988 that revealed no traces of Rain–X and a test performed on a "control vehicle" that exhibited traces of Rain–X after six months of use and exposure; (2) the deposition testimony of Marguerite Rooney, Rooney's wife, which stated that the windshield Rooney had purportedly just treated with Rain–X corresponded in appearance to a picture of a windshield without Rain–X on the Rain–X box; and (3) Rooney's deposition testimony, in which he was unable to identify with precision the amount of time he spent applying Rain–X to his automobiles or the exact date on which he used the product. Unelko argues that this evidence constitutes a sufficient showing to raise a triable issue of fact as to whether Rooney used Rain–X at all, and thus as to the falsity of factual assertions stated or implied in Rooney's segment.

The district court's finding that, in spite of this evidence, "no reasonable jury could conclude that Rooney did not use Rain–X on two of his vehicles sometime during the winter of 1987–88" is persuasive. As the district court noted, Unelko's evidence is inferential and ambiguous. Rooney's deposition testimony, although not precise, reveals familiarity with Rain–X's properties when applied. Marguerite Rooney's deposition testimony supports her husband's testimony that he used Rain–X; she testified that she first learned of Rooney's Rain–X use in late 1987, when her windshield appeared foggy and she asked her husband what he had done to the car. Finally, given the absence of any evidence that Rooney's Connecticut-based vehicles and Unelko's Arizona-based "control vehicle" were maintained under the same conditions, the district court properly found that the test evidence did not satisfy Unelko's burden of making a showing of falsity. *Cf. Cowens v. Siemens–Elema AB,* 837 F.2d 817, 820 (8th Cir.1988) ("It is settled law that evidence of experimental tests is inadmissible absent a foundational showing that the tests were conducted under conditions similar to those surrounding the incident at issue.").

**4.** Indeed, Unelko's promotional literature states that the length of time Rain–X remains on car

As the Supreme Court noted in *Anderson,* "[t]he question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." 477 U.S. at 254, 106 S.Ct. at 2513 (emphasis in original). A reasonable jury could not find that Unelko met its burden of proving falsity by a preponderance of the evidence. Unelko provided no evidence that traces of Rain–X on Rooney's vehicles would survive a Connecticut winter[4]; moreover, " 'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' " *Id.* at 256–57, 106 S.Ct. at 2514–15 (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984)). Unelko has thus failed to produce any "affirmative evidence … to defeat a properly supported motion for summary judgment." *Id.* 477 U.S. at 257, 106 S.Ct. at 2514. It has, at best, created ambiguity, and this fails to meet the constitutional standard. *See Hepps,* 475 U.S. at 776, 106 S.Ct. at 1563 ("[T]he burden of proof is the deciding factor … when the evidence is ambiguous…. [W]here the scales are in such an uncertain balance, we believe that the Constitution requires us to tip them in favor of protecting true speech.").

A factual statement need only be substantially true in order to be protected from a suit for defamation. *Fendler v. Phoenix Newspapers, Inc.,* 130 Ariz. 475, 636 P.2d 1257, 1261 (Ct.App.1981). Unelko's evidence did not demonstrate that any of Rooney's statements were false in substance and thus was not sufficient to avoid summary judgment. Because there was not sufficient evidence favoring Unelko for a jury to return a verdict against Rooney, the district court properly granted summary judgment on Unelko's defamation claim.

## II. Unelko's Other Claims

Unelko also argues that its claims for product disparagement, or "trade li-

windows is dependent upon such factors as environment, climate, and time of year.

bel," and for tortious interference with business relationships were improperly dismissed. These claims, however, are subject to the same first amendment requirements that govern actions for defamation. *See Gee v. Pima County,* 126 Ariz. 116, 116, 612 P.2d 1079, 1079 (Ariz.App.1980) (requiring "the intentional publication of an injurious falsehood" for trade libel); *Snow v. Western Sav. & Loan Ass'n,* 152 Ariz. 27, 35, 730 P.2d 204, 212 (1986) (en banc) ("To be 'improper' an interference [with business relationships] must be 'wrongful by some measure beyond the fact of the interference itself.'" (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.,* 283 Or. 201, 209, 582 P.2d 1365, 1371 (1978)). *See generally Falwell,* 485 U.S. at 57, 108 S.Ct. at 883 (noting that when a claim for defamation fails because defendant's speech is constitutionally protected, a claim for intentional infliction of emotional distress "cannot, consistently with the First Amendment, form a basis for the award of damages"); *Fendler,* 130 Ariz. at 480–81, 636 P.2d at 1262–63 (defense of truth is equally applicable to other causes of action based upon the same libel claim). Because it properly found that no genuine issue of fact existed as to whether Rooney's words constituted defamatory statements of fact, the district court did not err in granting summary judgment on Unelko's other claims.

The district court's judgment is AFFIRMED.