**Frank F. FASI, Plaintiff,**

v.

**GANNETT COMPANY, INC.; Liberty Newspapers, Ltd.; Phillips Media Services; Rupert Phillips, an individual, Defendants.**

**Civil No. 95–00585 DAE.**

United States District Court, D. Hawai'i.

Dec. 11, 1995.

David F. Fasi, Honolulu, HI, Neil Papiano, Gioia M. Fasi, Barbara L. Berkowitz, Iverson Yoakum Papiano & Hatch, Los Angeles, CA, for Frank F. Fasi.

Jeffrey S. Portnoy, Cades Schutte Fleming & Wright, Honolulu, HI, for Gannett Publishing, Inc. and Hawai'i Newspaper Agency.

Margaret Jenkins Leong, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for Honolulu Star Bulletin, Inc., Liberty Newspapers Limited Partnership, Phillips Media Services, Rupert Phillips, John M. Flanagan, David Shapiro, Diane Yukihiro Chang, Frank Bridgewater, Michael Rovner and Gannett Co., Inc.

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT

DAVID ALAN EZRA, District Judge.

The court heard Defendants' Motions on December 4, 1995. Barbara Berkowitz, Esq., and David Fasi, Esq., appeared at the hearing on behalf of Plaintiff; Margaret Jenkins Leong, Esq., and Michael S. Joaquin, Esq., appeared at the hearing on behalf of Defendants Liberty Newspapers Ltd., Phillips Media Services, and Rupert Phillips (collectively, the "Liberty Newspapers Defendants"), and Jeffrey Portnoy, Esq., made a telephonic

appearance at the hearing on behalf of Defendant Gannett Co. Inc. (erroneously named in Plaintiff's complaint as "Gannett Company Inc."). After reviewing the motions and the supporting and opposing memoranda, the court GRANTS Liberty Newspapers Defendants' Motion to Dismiss and GRANTS Gannett Co. Inc.'s Motion to Dismiss.

## BACKGROUND

Plaintiff Frank F. Fasi ("Fasi") served as Mayor of the City and County of Honolulu, Hawaii, from 1969 to 1980 and from 1985 to 1994.[1] This action concerns an editorial about Fasi that appeared in the Honolulu Star–Bulletin on July 13, 1993, entitled "Blackmail Incorporated."[2] *See* Star–Bulletin Defendants' Motion to Dismiss, Exhibit A. Fasi's First Amended Complaint[3] alleges causes of action for: libel per se (Count I); invasion of privacy—false light (Count II); and intentional infliction of emotional distress (Count III). Fasi prays for general, special and exemplary damages totalling no less than $70,000,000, as well as costs of suit.

Fasi argues that portions of the article are libelous because they accuse Fasi of the crimes of extortion and blackmail, focusing in Publishing, Inc., Hawaii Newspaper Agency, Honolulu Star–Bulletin, Inc., Liberty Newspapers Ltd., Phillips Media Services, Rupert Phillips, John M. Flanagan, David Shapiro, Diane Yukihiro Chang, Frank Bridgewater, and Michael Rovner. On August 28, 1995, those Defendants filed motions to dismiss Fasi's complaint. They argued that this court did not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity was lacking among all Defendants.

Additionally, Honolulu Star–Bulletin, Inc., Liberty Newspapers Ltd., Phillips Media Services, Rupert Phillips, John M. Flanagan, David Shapiro, Diane Yukihiro Chang, Frank Bridgewater, and Michael Rovner ("Star–Bulletin Defendants") moved to dismiss under Fed.R.Civ.P. 12(b)(6) on the alternate grounds that the complaint failed to state a claim because the editorial is not actionable under the First Amendment. The Star–Bulletin Defendants asserted that the statements at issue are expressions of opinion protected by the United States Constitution.

However, on October 13, 1995, Fasi filed a First Amended Complaint pursuant to Fed. R.Civ.P. 15(a). Rule 15(a) allows a party the opportunity to amend its complaint as a matter of course "before a responsive pleading is served," Fed.R.Civ.P. 15(a), and "a motion to dismiss is not a responsive pleading within the meaning of the Rule." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) (internal quotations and brackets omitted). In his amended complaint, Fasi dropped all non-diverse dispensable parties.

At a hearing on November 6, 1995, counsel for Fasi reported that Gannett Co. Inc. (erroneously named as "Gannett Company Inc.") had not yet been served with the First Amended Complaint and as a result, was not represented at the hearing. Accordingly, the court continued the hearing to allow Fasi to serve Gannett Co. Inc. and provide it an opportunity to respond in the suit. On November 17, 1995, Gannett Co. Inc. filed a joinder in the Liberty Newspapers Defendants' Motion to Dismiss.

---

1. Fasi reports that he resigned from his position as Mayor in July 1994, in accordance with Hawaii law to become a candidate for Governor of Hawaii in 1994. Plaintiff's Complaint, at 2.

2. The full text of the article reads:

*Blackmail incorporated*

Frank "The Extortionist" Fasi is at it again. His current target is the Estate of James Campbell, which wants to rezone 1,781 agricultural acres so it can build a housing and commercial development at Kapolei. The mayor of Honolulu is agreeable—but only if the estate gives the city 2,500 acres of nearby land so he can build a sport complex.

Unless the "donation" is forthcoming, Fasi promises to oppose the rezoning request. Last week he testified against the project before the state Land Use Commission. Why he doesn't wait until it reaches the county level is a mystery to those unfamiliar with his penchant for grandstanding.

Another mystery is where Fasi gets the impression that he can sell or barter zoning. Government is the grantor of such decisions, but those determinations should be based on the need, quality and impact of projects on the community, not on what can be successfully traded or coerced from the private sector.

Companies like Campbell Estate want the city to study the merits of their plans. If there are negative impacts, they need to be rectified. That's called responsible development.

But legalized blackmail has unintended victims—the Hawaii resident still searching for an affordably priced home. Developers already stagger through a long, maze-like permitting process that adds millions of dollars to their projects. They are also required to put in much of the infrastructure like roads, sewers and lighting. And now land to build sports complexes?

Those costs are simply passed on to the home buyer and are reflected in higher prices. When Frank Fasi extorts money from developers, it's the house-hunting public that is taken to the cleaners.

3. Plaintiff's original complaint was filed on July 18, 1995, and named as Defendants Gannett

particular upon the language "Frank 'The Extortionist' Fasi is at it again," and "When Frank Fasi extorts money from developers, it's the house-hunting public that is taken to the cleaners." *Id.* Fasi further claims that these statements were made in reckless disregard of the truth and with malice, and were "designed to cause injury to Plaintiff's reputation by accusing Plaintiff of illegal and immoral conduct while he held public office...." Amended Complaint, at 5.

The Liberty Newspapers Defendants filed a Motion to Dismiss First Amended Complaint on November 2, 1995, and on November 17, 1995, Defendant Gannett Co. Inc. filed a joinder in the motion. All Defendants argue that the speech which is the gravamen of Plaintiff's cause of action is protected under the First Amendment of the United States Constitution.

### STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of him claim which would entitle him to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.*

### DISCUSSION

I. Fasi's Defamation Claim

Count I of Fasi's First Amended Complaint alleges a cause of action for libel per se. Under Hawaii law, the following classes of libel are libels per se:

(1) Libels which impute to a person the commission of a crime.

(2) Libels which have a tendency to injure him in his office, profession, calling or trade.

(3) Libels which hold him up to scorn and ridicule and to feelings of contempt or execration, impair him in the enjoyment of society and injure those imperfect rights of

friendly intercourse and mutual benevolence which man has with respect to man. *See Partington v. Bugliosi,* 825 F.Supp. 906, 915 (D.Haw.1993), *aff'd,* 56 F.3d 1147 (9th Cir.1995) (citations omitted). However, before engaging in a libel per se analysis, the court must first examine the broader question of whether the statements in "Blackmail incorporated" are actionable.

Fasi's libel claim must be considered in light of the "profound principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964) (citations omitted). The Supreme Court has stated that this constitutional safeguard "was fashioned to assure unfettered interchange of ideas for the bringing of political and social changes desired by the people." *Sullivan,* 376 U.S. at 269, 84 S.Ct. at 720 (citing *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)).

In *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court recognized the need for "a federal rule that prohibits a public official from recovering damages for defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279–280, 84 S.Ct. at 726 (cited in *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 14, 110 S.Ct. 2695, 2703, 111 L.Ed.2d 1 (1990)). In one of the next steps in the constitutional evolution, the Court concluded that "the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages against a media defendant for speech of public concern." *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 777, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). *Philadelphia Newspapers* set forth a constitutional requirement that the plaintiff "bear the burden of showing falsity, as well as fault, before recovering damages." *Id.* at 776, 106 S.Ct. at 1563.

The Supreme Court has also "recognized constitutional limitations on the type of speech which may be the subject of state defamation actions." *Milkovich*, 497 U.S. at 16, 110 S.Ct. at 2704 (emphasis in original); *see also Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). In *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), a newspaper was sued for republishing a speaker's comment at a city council meeting that plaintiff, a local real estate developer and politician, was "blackmailing" the city in connection with pending negotiations.[4] The Court concluded that no libel had been committed because no one who read the account would have considered that the plaintiff was being charged with the crime of blackmail. *Id.* at 13, 14, 90 S.Ct. at 1542. The Court stated that the word was "no more than rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff's] negotiating position extremely unreasonable." *Id.* at 14, 90 S.Ct. at 1541–42.[5]

■■ This court recognizes that there is no "wholesale defamation exemption for any-thing that might be labeled 'opinion.'" *See Milkovich v. Lorain Journal Co.*, 497 U.S. at 18, 110 S.Ct. at 2705. In *Milkovich*, the Supreme Court reasoned that "[s]imply couching such statements in terms of opinion does not dispel [the false, defamatory] implications" because a speaker may still imply "a knowledge of facts which lead to the [defamatory] conclusion." *Id.* at 19, 110 S.Ct. at 2706. It therefore held that, while "pure" opinions are protected by the First Amendment, a statement that "may ... imply a false assertion of fact" is actionable. *Id.*[6]

■■ The Ninth Circuit interpreted *Milkovich* in *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir.1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1586, 113 L.Ed.2d 650 (1991). The Ninth Circuit held that, in reviewing a defamation claim, a court must ask as a threshold matter "whether a reasonable factfinder could conclude that the contested statement 'impl[ies] an assertion of objective fact.'" *See Partington v. Bugliosi*, 56 F.3d 1147, 1153 (citing *Unelko*, 912 F.2d at 1053). "If the answer is no, the claim is foreclosed by the First Amendment." *Id.* at 1153. As

---

**4.** Some of the facts of *Greenbelt* are similar to the instant case; the plaintiff in *Greenbelt* was:

> engaged in negotiations with the Greenbelt City council to obtain certain zoning variances that would allow the construction of high-density housing on land owned by him. At the same time, the city was attempting to acquire another tract of land owned by Bresler for the construction of a new high school ... [J]oint negotiations evoked substantial local controversy
>
> ....

398 U.S. at 7, 90 S.Ct. at 1538. The plaintiff's primary contention was that the speakers in using the word "blackmail" at the city council meeting and the newspaper in reporting the use of the word in newspaper articles, were charging the plaintiff with the crime of blackmail, even though they knew that he had committed no such crime. *Id.* at 13, 90 S.Ct. at 1541.

**5.** The full text of the Supreme Court's conclusion is worth quoting here:

> It is simply impossible to believe that a reader who reached the word "blackmail" in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense. On the contrary,

even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet by those who considered Bresler's negotiating position extremely unreasonable. Indeed, the record is devoid of evidence that anyone in the city of Greenbelt or anywhere else thought that Bresler had been charged with a crime.

*Greenbelt*, 398 U.S. at 14, 90 S.Ct. at 1541 (internal citations omitted).

Similarly, in *Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), the Court relied on *Greenbelt* and held that "no one could reasonably understand publication of a well-known definition of a 'scab,' attributed to Jack London, as a 'traitor to his God, his country, his family and his class,' as charging the crime of treason." *Id.* at 284–86, 94 S.Ct. at 2781 (quoted in *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 62 (2d Cir.1980)). The Court stated that the words were protected because defendants were using them "in a loose, figurative sense ... merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members to those who refuse to join." *Letter Carriers*, 418 U.S. at 284–86, 94 S.Ct. at 2781.

**6.** "Pure" opinions are those that "do not imply facts capable of being proved true or false." *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir.1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1586, 113 L.Ed.2d 650 (1991).

a starting point for the analysis, the Ninth Circuit adopted a three-part test: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington,* 56 F.3d at 1153. Both parties are in agreement that this is the appropriate test to apply here.

 This court must examine the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside of the protection of the First Amendment. *See id.* Having done so, the court concludes that in this case the general and specific contexts in which the Defendants' contested statements were made do not imply the assertion of objective facts. The court further concludes that the challenged statements are not capable of being proved true or false. Accordingly, the court holds that, under the standards outlined in *Milkovich,* Fasi fails to state a defamation claim. The statements are protected by the First Amendment and are therefore not actionable.

### A. *No Objective Facts*

 Fasi repeatedly argues that "accusations of criminal activity, even in the form of opinion, are not constitutionally protected," citing *Cianci v. New Times Publishing Co.,* 639 F.2d 54, 63 (2d Cir.1980) as support. *See* Plaintiff's Opposition, at 11. The court does not dispute this proposition, but cannot reasonably conclude that the editorial article at issue accuses Fasi of criminal activity. The challenged statements must be analyzed in their broad context to determine whether they imply the assertion of an objective fact. *See Partington,* 56 F.3d at 1153 (citations omitted).

Defendants offer two arguments to support their contention that the general tenor of the editorial demonstrates that it sets forth opinion rather than fact. First, Defendants assert that the statement was made in a forum where readers anticipate subjective views. The court agrees. In *Partington,* the Ninth Circuit, in affirming this court, emphasized the importance of evaluating the "general tenor" of a work, " 'with an eye towards readers' expectations and understandings [of it].' " 56 F.3d at 1154 (citing *Moldea v. New York Times,* 22 F.3d 310, 315 (D.C.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994)). The question is whether Defendants' statements were likely to be recognized by a reader as "highly subjective opinions of the author rather than assertions of verifiable, objective facts." *Partington,* 56 F.3d at 1154. Here, the statements Fasi challenges appeared on the editorial page of the Honolulu Star–Bulletin along with six other editorial articles. The Star–Bulletin's readers recognize that the commentary included on the editorial page contains the subjective views of authors and the publication's editorial staff, as opposed to "hard" news. *See, e.g., Milkovich,* 497 U.S. at 32, 110 S.Ct. at 2713 ("Certain formats—editorials, reviews, political cartoons, letters to the editor—signal to the reader to anticipate a departure from what is actually known by the author as fact.") (Brennan, J., dissenting) (citations omitted); *cf. Moldea,* 22 F.3d at 315 (stressing that in critical literary reviews, a critic must be given "constitutional 'breathing space' appropriate to the genre.").

 Second, Defendants argue that the underlying facts that formed the basis for the article are disclosed, and under the circumstances, the editorial is constitutionally protected. In *Partington,* the Ninth Circuit stated that, "[w]hen ... an author writing about a controversial occurrence fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts, his statements should generally be protected by the First Amendment." 56 F.3d at 1154.[7] Here, the authors of "Blackmail incorporated" dis-

---

7. The Ninth Circuit agreed with this court's analysis in *Partington v. Bugliosi,* 825 F.Supp. 906, 920 (D.Haw.1993), wherein this court stated, "[s]ince the authors make clear the point at which they run out of facts and are simply guessing, the statement, taken in context, cannot reasonably be interpreted as an assertion of fact."

close the facts upon which they base their conclusion that Fasi engaged in "legalized blackmail" and "extortion." Readers of the article are therefore able to understand that the authors are highly critical of Fasi, but are free to form their own opinions based on the facts presented. Thus, under the first part of the test outlined above, the court concludes that the general context in which the statements were made negates the impression that they imply a false statement of fact.

### B. *Figurative or Hyperbolic Language*

For purposes of the second part of the analysis, the court finds that the *Greenbelt* analysis controls. There, the Court concluded that the use of the word "blackmailing" was no more than "rhetorical hyperbole, a vigorous epithet used by those who considered the plaintiff's negotiating position extremely unreasonable." 398 U.S. at 14, 90 S.Ct. at 1542. Here, Defendants' use of hyperbolic language such as "Blackmail incorporated," "Frank 'The Extortionist' Fasi," and "legalized blackmail," suggests that they were not making objective statements of fact. Such "rhetorical hyperbole" and "imaginative expression" is protected by the First Amendment. *See Partington*, 56 F.3d at 1157.

### C. *Not Susceptible of Being Proved True or False*

The third part of the test requires the court to determine whether the statements are capable of being proved true or false. While acknowledging that this case is distinguishable from cases in which courts have examined such words or phrases as "fake," "phony," "hefty mark-up," "sloppy journalism," concluding that they were not actionable, *see Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir.), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 567 (1992); *Chapin v. Knight–Ridder*, 993 F.2d 1087, 1093 (4th Cir. 1993); *Moldea*, 22 F.3d at 310, the court does not agree with Fasi that the article is unprotected because it unquestionably accuses

Fasi of criminal conduct. The words "blackmail" and "extortion" must be read in context to determine whether the authors are actually accusing Fasi of criminal conduct; the determination cannot be made, as Fasi contends, by simply referring to the Webster's Dictionary definition of a "fact." Plaintiff's Opposition, at 18–19. Defendants correctly point out that the authors use the term "legalized blackmail" when describing Fasi's conduct; this casts doubt on Fasi's assertion that "blackmail" and "extortion" are not capable of having numerous interpretations. Moreover, this court heeds the counsel of both Supreme Court and Ninth Circuit precedent that "where the question of truth or falsity is a close one, a court should err on the side of nonactionability." *Partington*, 56 F.3d at 1159 (citing *Moldea*, 22 F.3d at 317; *Liberty Lobby v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988)).

Federal courts play a vital role in protecting the First Amendment rights of those engaged in robust and oftentimes controversial speech that touches on matters of public concern. This task can be difficult, as James Madison recognized when he stated, "Some degree of abuse is inseparable from the proper use of every thing; and in no instance is this more true than in that of the press." *See Sullivan*, 376 U.S. at 271, 84 S.Ct. at 721 (citing 4 Elliot's Debates on the Federal Constitution 571 (1876)). However, a firm principle upon which our democracy was founded and has flourished is that free debate is entitled to the "breathing space" that it needs to survive in order to benefit the public. *See Sullivan*, 376 U.S. at 272, 84 S.Ct. at 721. While it is true that the editorial page is no longer a safe harbor for otherwise actionable libel, it is also true that the First Amendment provides broad parameters within which comment upon public issues and public officials may safely be made.

The analysis above leads this court to the conclusion that the statements made about Fasi in the Star–Bulletin editorial, though strident, tough and uncompromising, are protected under the First Amendment, and thus

are not actionable. Accordingly, the court DISMISSES Fasi's Complaint as to Count I.

## II. Fasi's False Light Invasion of Privacy and Intentional Infliction of Emotional Distress Claims

 Fasi's false light claim also lacks merit. The challenged statements are not actionable under the First Amendment, "regardless of the form of the tort alleged." *See Partington,* 56 F.3d at 1160. Similarly, this court rejects Fasi's claim for intentional infliction of emotional distress. Fasi's claim is foreclosed by *Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). In *Hustler Magazine,* the Court held that, "public figures and public officials may not recover for the tort of emotional distress by reason of publications ... without showing in addition that the publications contains a false statement of fact which was made with 'actual malice,' i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Id.* at 56, 108 S.Ct. at 882. As concluded in the analysis above, the editorial at issue contains no false factual assertions, and "actual malice" cannot be established. The court therefore DISMISSES Fasi's claims for False Light Invasion of Privacy (Count II) and Intentional Infliction of Emotional Distress (Count III).

### CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion to Dismiss Plaintiff's Complaint as to all Counts.

IT IS SO ORDERED.